UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KEITH WALLACE, | : | |
| | : | |
| Plaintiff, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **12 Civ. 8723 (PAC) (RLE)** |
| BRIAN FISCHER, Individually, and as the | : | |
| Commissioner of NYS DOCS, et al., | : | |
| Defendants. | : | |

**To the HONORABLE PAUL A. CROTTY, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Plaintiff Keith Wallace ("Wallace"), a former prisoner at Green Haven

Correctional Facility ("Green Haven"), filed the Complaint in this case on November 29, 2012.

He brings the action under 42 U.S.C. § 1983, alleging retaliation in violation of the First

Amendment to the United States Constitution. (Compl. ¶ 1.) Wallace also claims that his rights

were violated under the Eighth Amendment, the Due Process Clause of the Fifth and Fourteenth

Amendments, and Article 1, § 6 of the New York State Constitution. (*Id.* at ¶ 25.) He named as

Defendants Brian Fischer ("Fischer"), Commissioner of the New York State Department of

Correctional Services ("NYS DOCS," recently renamed the Department of Corrections and

Community Supervision ("DOCCS")); William A. Lee ("Lee"), Superintendent of Green Haven;

Lieutenant Melville, Hearing Officer of Green Haven ("Melville"); Sergeant Funk, Investigating

Sergeant of Green Haven ("Funk"); Officer Fredericks, of Green Haven ("Fredericks"); Albert

Prack, Director of Special Housing / Inmate Disciplinary Program ("Prack"); and R. Koskowski,

Deputy Superintendent of Security at Green Haven ("Koskowski"). Fischer, Lee, Melville,

Funk, Fredericks, and Prack (collectively, the "Defendants") were all served with Wallace's

Summons and Complaint.  (*See* Doc. Nos. 10, 11, 13, 14, 15, 20.)[1]  Before the Court is

Defendants' motion to dismiss Wallace's claims (Defs.' Mem. in Supp. of Mot. to Dismiss

("Defs.' Mem.")), and Wallace's motion for sanctions.  (Notice of Mot. In Opp'n to Defs.' Rule

12(b)(1) and (6) Mot. ("Pl.'s Mem.")).

 For the reasons that follow, I recommend that Defendants' motion to dismiss be

**GRANTED** in part and **DISMISSED** in part.  Specifically, I recommend that:  (1) Defendants'

motion to dismiss Wallace's retaliation claims against Fredericks and Funk be granted because

Wallace failed to exhaust his administrative remedies; (2) Defendants' motion to dismiss

Wallace's First Amendment claims against Lee, Fischer, and Prack be granted; (3) Wallace be

granted leave to amend his procedural due process claim to indicate any "atypical and significant

hardship" endured during his twelve-month confinement in the prison's special housing unit

("SHU"); (4) the claims against Fischer and Prack be dismissed for lack of personal involvement

in the alleged constitutional violations; (5) Defendants' motion to dismiss Wallace's due process

claim against Melville for failure to disclose the substance of the evidence against him be

denied; (6) Defendants be found entitled to qualified immunity in their official capacities; (7)

Fischer, Prack, and Fredericks be found entitled to qualified immunity in their individual

capacities; and (8) Wallace's motion for sanctions pursuant to Rule 11 of the Federal Rules of

Civil Procedure be denied.

---

[1] Service was never executed on Koskowski.

## II. BACKGROUND[2]

### A. Factual History

Wallace was incarcerated at Green Haven from July 2010 through April 2011. (Compl. ¶ 1.) On July 27, 2010, Wallace wrote a letter to Superintendent Lee which he called a "formal complaint as a grievance." (Pl. Mem. Ex. A.) In it, Wallace accused Officer Fredericks of threatening him with disciplinary charges in retaliation for challenging his "racist, sadistic and inhumane conduct toward me." (*Id.*) Wallace claimed that Fredericks falsely accused him of transporting drugs into the jail and told him that "the next stabbing or cutting in G-block would be his." (*Id.*) Wallace asserted that he did not deal drugs. (*Id.*)

On July 31, 2010, Wallace wrote another letter to Lee alleging that, when Sergeant Funk interviewed him regarding the complaint against Fredericks, Funk said "I don't believe inmates over my officers and if you continue to file complaints you will be set up and sent to the box for a long time. This is Green Haven." (*See* Pl. Mem. Ex. B.) Wallace stated that he believed Funk, Fredericks, and the Deputy Superintendent of Security were conspiring and retaliating against him. (*Id.*) He asked Lee to send the Inspector General to investigate. (*Id.*)

On August 3, Wallace was placed under a seventy-two-hour investigation for cutting Elliot, an inmate in G-Block. (Compl. ¶ 12.) Wallace alleges that the investigation was retaliatory because Elliot told Funk and Fredericks that "Plaintiff did not cut him." (*Id.*) (emphasis in original).

---

[2] The Court's account of the facts is drawn from Wallace's Complaint ("Compl.") and his May 14, 2013 Memorandum. (Doc. No. 19). *See Blue v. Macy's Herald Square*, No. 12 Civ. 5673 (PAE), 2013 WL 3717777, at *5 n.2 (S.D.N.Y. July 16, 2013) (citing *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec.18, 2012) (A *pro se* plaintiff's allegations must be construed liberally when deciding a motion to dismiss, and therefore it is appropriate for a court to consider factual allegations made in the plaintiff's opposition papers, so long as they are consistent with the complaint)).

On August 5, Funk filed an Inmate Misbehavior Report, charging Wallace with violations of Rules 100.10 (inmate shall not assault or inflict harm upon another inmate) and 113.10 (inmate shall not possess, use a weapon). (*Id.* at ¶ 13.; Pl. Mem. Ex. C.)  The misbehavior report states:

> After conducting an investigation into the attack of inmate Elliot . . . which included staff and inmate interview and review of medical reports, it has been determined that inmate Wallace . . . was the individual responsible for the attack which resulted in inmate Elliot . . . receiving la[c]erations to his left cheek and left for[e]arm consistent with injuries sustained from a razor-type weapon.

(Pl. Mem. Ex. C.)

Wallace sent another letter to Lee on August 8, in which he stated that he received a "retaliatory and falsified Tier III Misbehavior Report." (Pl. Mem. Ex. D.)  He maintained his innocence, stating he "was nowhere near inmate Elliot." (*Id.*)

On August 12, Wallace's Correction Counselor Michael Lockwood ("Lockwood") wrote a letter to the Deputy Superintendent of Security, R. Koskowski. (*See* Pl. Mem. Ex. E.) Lockwood wrote that Elliot asserted that Wallace "did not assault him," but that "unnamed and unidentified" Correction Officers told Elliot to name Wallace as his assailant because they "wanted Wallace." (*Id.*)  Lockwood stated that Elliot refused to testify at Wallace's hearing because he was being released in seven months and feared retaliation from security staff. (*Id.*)

On August 16, Wallace wrote to Lee, again informing him of his innocence regarding the rule violations and misbehavior report. (*See* Pl. Mem. Ex. F.)  He wrote that he filed grievances on July 27, July 31, August 8, and August 14 against Fredericks and Funk, but that he had "yet to receive a grievance number" pursuant to Directive #4040.[3] (*Id.* at 1.)  Wallace wrote that the

---

[3] "DOCS Directive #4040 requires that grievance files and logs be maintained for at least the current year plus the previous four calendar years." (Decl. of Thomas Mauro ("Mauro Decl.") at 1.)

Second Circuit "recognize[s] various exceptions to the exhaustion of inmate grievance[]" requirements. (*Id.* at 2.)

Also on August 16, Elliot completed a form titled Requested Inmate Witness Refusal to Testify in Tier II / Tier III Disciplinary Hearing ("Witness Refusal Form"). (Pl. Mem. Ex. F. at 3.) He wrote that he was refusing to testify on behalf of Wallace at the hearing because he "did not see [the] attacker and therefore cannot offer credible testimony stating it was or was not Mr. Wallace." (*Id.*)

Between August 5 and August 26, Wallace was held in keeplock[4] while a hearing officer reviewed the allegations that Wallace violated the rules. (*See* Pl. Mem. Ex. H at 1.) On August 18, Wallace wrote a letter to Commissioner Fischer explaining that Frederick and Funk had "set[] [him] up with the cutting of Mr. Elliot" and that he had failed to receive any response to the grievances sent to Lee. (*See* Pl. Mem. Ex. G at 1.) He asked Fischer to investigate why he was being held in keeplock and why he was required to attend a Tier III hearing. (*Id.*) Wallace also wrote that Hearing Officer Lieutenant Melville was making threats against him, stating "I don't care what Elliot said, your [sic] going down Wallace," and "since you don't want to cooperate with me, get it on appeal." (*Id.*)

On August 26, following a Tier III Disciplinary Hearing, Melville found Wallace guilty and imposed twelve months of SHU confinement with loss of privileges. (Compl. ¶ 16; Pl. Mem. Ex. H at 1.) In the Hearing Disposition, Melville wrote that he relied on "confidential testimony from two sources," which was "deemed credible and reliable by the hearing officer."

---

[4] "Keeplock" refers to segregated confinement. *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 514 (S.D.N.Y. 2012).

(Pl. Mem. Ex. H at 2.) He continued: "The [i]nformation obtained was consistent with the misbehavior report. Between confidential information and misbehavior report inmate is found guilty of charges." (*Id.*) Wallace was "not permitted to review [the] confidential testimony in order to not jeopardize the safety and security of the facility." (*Id.* at 3.) Wallace appealed Melville's decision on September 8, 2010. (Pl. Mem. Ex. I.) On November 4, 2010, Wallace's hearing decision was "reviewed and affirmed" by Albert Prack, Director of Special Housing / Inmate Disciplinary Program. (*See* Pl. Mem. Ex. J.)

On August 29, Wallace filed an Inmate Grievance Complaint. (Mauro Decl. Ex. A.) He wrote that Funk "falsely accused" him of violating disciplinary rules, and that witness testimony supported his innocence. (*Id.* at 1.) In early September, Correction Officer B. Anspach authored a brief investigative report: "this is a non-grievance issue per Dir. 4040." (*Id.* at 2.) On October 5, the Inmate Grievance Resolution Committee ("IGRC") responded to Wallace: "IGRC recommends that grievant use the teir [sic] system appeal process. Note: Disciplinary issues are outside the purview of IGRC. Close and Dismiss." (*Id.* at 3.)

In March 2011, Wallace filed an Article 78 Petition challenging the hearing officer's decision. (*See* Compl. ¶ 19.) His petition was denied. (*Id.*)

Wallace filed suit in this Court on November 29, 2012. (*See* Compl.) In his Complaint, he alleges that Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution, and he seeks compensatory and punitive damages under Sections 1983, 1985, and 1986 of Title 42 of the United States Code. (*Id.* at ¶ 1.) He sets forth the following claims: (1) After Wallace accused Fredericks of racial discrimination, Funk and Fredericks retaliated by filing a misbehavior report in which they falsely accused Wallace of assaulting Elliot (*id.* at ¶¶ 1, 2, 10); (2) Koskowski, Lee, and Fischer failed to step in and stop the

6

Tier III Hearing (*id.* at ¶ 15); (3) Melville illegally "found [Wallace] guilty of all charges and imposed 12-months of SHU confinement" and loss of all privileges (*id.* at ¶ 16); (4) Fischer and Prack "acted in concert to prevent [Wallace] from receiving a fair and impartial Tier III Appeal" and violated federal and state laws by affirming Wallace's guilty disposition (*id.* at ¶¶ 15, 18); (5) Fischer, Prack, and Lee failed to adequately train and supervise Federicks, Funk, Melville, and Koskowski, "ignored evidence" that Fredericks and Funk had retaliated against him, "which amounts to cruel and unusual punishment," and failed to protect Wallace (Compl. ¶¶ 22, 23, 24); (6) Defendants denied Wallace adequate treatment, which violated his due process rights (*id.* at ¶ 20); and (7) Fischer, Prack, Lee, and Koskowski systematically created a policy, custom, and pattern which allowed Fredericks, Funk and Melville to "frame" Wallace "without fear of any sanctions." (*Id.*)

On April 8, 2013, Defendants moved to dismiss all of Wallace's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting that: (1) Wallace failed to exhaust his administrative remedies against Frederick and Funk; (2) Wallace has failed to state a claim upon which relief can be granted; (3) Wallace has not alleged any Due Process violations; and (4) Defendants are entitled to qualified immunity. (*See* Defs.' Mem. at 2.) On May 14, 2013, Wallace submitted his opposition to Defendants' motion, in which he reasserts his claims from the Complaint and additionally alleges that Defendants' counsel violated Rule 11 of the Federal Rules of Civil Procedure by obtaining a falsified declaration from Thomas Mauro. (Pl.'s Mem. at 10, 11.) On June 10, 2013, Defendants filed a Reply. (Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply").)

## III. DISCUSSION

### A. Standard for Dismissal Under 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Accordingly, where a plaintiff has not "nudged his claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. The court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). The court must also "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court, however, is not bound to accept as true a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. A complaint does not need detailed factual allegations, but the plaintiff is obligated to provide the grounds of his entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.*

*Pro se* complaints are held to less stringent standards, and should be read "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *Daughtrey v. City of N.Y.*, 11 Civ. 9693 (PAE) (JCF), 2012 WL 4849137, at *2 (S.D.N.Y. June 29, 2012)). In deciding a motion

8

to dismiss involving a *pro se* plaintiff, the court can look beyond the "four corners of the complaint" to all the pleadings before the court, including the plaintiff's opposition papers. *Mayo v. Fed. Gov't*, No. 11 Civ. 2828 (RLE), 2012 WL 4474589, at *5 (S.D.N.Y. Sept. 28, 2012), *amended on reconsideration in part*, No. 11 Civ. 2828 (RLE), 2013 WL 1943346 (S.D.N.Y. May 10, 2013); *Gonzalez v. Allied Barton Sec. Servs.*, No. 08 Civ. 9291 (RJS) (RLE), 2010 WL 428058, at *3 (S.D.N.Y. Feb. 2, 2010).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (the "PLRA") requires an inmate to exhaust all available administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Retaliation claims "fit within the category of inmate suits about prison life, and therefore must be preceded by the exhaustion of state administrative remedies available." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Exhaustion of all administrative remedies requires "full compliance with the procedural rules of the local administrative agency." *Daughtrey*, 2012 WL 4849137, at *2; *Mamon v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 8055 (NRB), 2012 WL 260287, at *3 (S.D.N.Y. Jan. 27, 2012). "[The] prison's requirements, and not the PLRA, define the boundaries of proper exhaustion." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

### 1. New York State's Inmate Grievance Program

Inmates incarcerated in New York State are subject to the Inmate Grievance Program ("IGP"), which is designed to provide "an orderly, fair, simple and expeditious method for resolving grievances." 7 N.Y.C.R.R. § 701.1. The IGP is administered by DOCCS. *Hemphill v.*

9

*New York*, 380 F.3d 680, 682 (2d Cir. 2004); *see also* 7 N.Y.C.R.R. § 701.7(a)(1).  After the

inmate files a grievance with the IGRC, it is assigned a number, and will ultimately be reviewed

by an IGRC member.  7 N.Y.C.R.R. § 701.7(a)(3)-(4).  If the inmate is dissatisfied with the

Committee's decision, he can appeal to the facility superintendent and, subsequently, to the

Central Office Review Committee ("CORC") for a final administrative determination.  7

N.Y.C.R.R. § 701.7(b)-(c).

There is an expedited process for the review of complaints alleging harassment and

unlawful discrimination by correction officers or prison employees.  7 N.Y.C.R.R. §§ 701.8,

701.9.  In these circumstances, an inmate can report the misconduct directly to the employee's

supervisor.  *See id.*  This is not, however, a prerequisite for filing a grievance with the IGRC, and

the inmate must still file a grievance under the normal procedures outlined above.  7 N.Y.C.R.R.

§§ 701.8(a),701.9(a).  All expedited grievances are given a number and forwarded to the

superintendent by the close of that business day.  7 N.Y.C.R.R. §§ 701.8(b), 701.9(b).

### 2. Wallace Failed to Exhaust his Administrative Remedies against Funk and Fredericks.

In his Complaint, Wallace states that he "fully exhausted all available administrative

remedies," by filing a Tier III Appeal and an Article 78 Petition.  (Compl. ¶ 8.)  In his opposition

papers, however, he argues that: (1) he could not file a grievance due to Directive #4040, and;

(2) "under the Second Circuit's various exceptions to the exhaustion requirement," Defendants

and the IGRC "intentionally ignored Plaintiff's grievances."  (Pl.'s Mem. at 3, 4, 6.)  Failure to

exhaust is an affirmative defense, *see Jones*, 549 U.S. at 928, and Defendants have the burden of

proving that Wallace's retaliation claim has not been exhausted.  *See Jenkins v. Haubert*, 179

F.3d 19, 28-29 (2d Cir. 1999).  Defendants argue that Wallace failed to exhaust his claim against

Fredericks and Funk because the sole grievance he filed did not complain of retaliation by either Defendant, but instead complained of the ensuing disciplinary proceeding. (Defs.' Mem. at 5.) In support of this argument, Defendants have submitted a declaration from Thomas Mauro, Supervisor of the IGP at Green Haven, stating that Wallace only filed one grievance in 2010, and that was in response to his Tier III disciplinary hearing. (Mauro Decl. ¶ 4, Mauro Decl. Ex. A.)

Although Wallace claims that he filed formal complaints and grievances, the only evidence he submitted are the letters he sent to Superintendent Lee and Commissioner Fischer. (*See* Pl.'s Mem. Exs. A-G.) Complaint letters to the DOCCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements. *Hernandez v. Coffey*, No. 99 Civ. 11615 (WHP), 2003 WL 22241431, at *3 (S.D.N.Y. Sept. 29, 2003); *Beatty v. Goord*, 210 F. Supp. 2d 250, 255-56 (S.D.N.Y. 2000).

To satisfy the PLRA requirement, inmates must follow procedures established by New York State. *Hernandez v. Coffey*, 2003 WL 22241431, at *3. Wallace failed to exhaust his administrative remedies with respect to his retaliation claims. He did not properly file grievances with the IGRC, and even if he did, he did not pursue any of the grievances through all levels of the IGRC. *Houston v. Horn*, No. 09 Civ. 801 (DLC), 2010 WL 1948612, at *6 (S.D.N.Y. May 13, 2010). For example, having received no response from the IGRC within five working days, Wallace was required to request a formal hearing. *Id.* at *6. Instead, Wallace complained that the IGRC ignored his grievances, and offered no evidence that he requested a formal hearing or that a formal hearing was ever held concerning the retaliation grievances. (*See* Pl.'s Mem. at 2.) Even if an inmate receives no response to his initial grievance, he nevertheless must proceed through every step of the administrative process before filing a lawsuit. *Ramrattan v. Schriro*, No. 11 Civ. 3749 (JMF), 2013 WL 3009908, at *2 (S.D.N.Y. June 17, 2013). In

11

*Ramrattan,* the plaintiff failed to appeal the lack of response to his grievance, but also alleged that when he did not receive a response, he wrote letters to, or spoke with, the wardens of the prisons and to the DOC Commissioner. *Id.* at *2. The Court held that such letters and informal conversations do not satisfy the exhaustion requirement. *Id.* Even if Wallace's letters to the Superintendent and the Commissioner could be construed as an appeal to them, he did not appeal to the CORC, a necessary step in the exhaustion process.

Wallace does not acknowledge that he failed to exhaust. He asserts, however, that he should qualify under one of the exceptions to the requirement recognized by the Second Circuit, "including where defendant allegedly ignored [the] grievance." (Pl.'s Mem. at 6.) His position is meritless. The Second Circuit has cautioned that "while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply." *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter,* 534 U.S. at 524). In a case where an inmate challenges a defendant's assertion of failure to exhaust, the court must perform a three-part inquiry to assess exhaustion. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). First, the court must ask whether the administrative remedies were actually "available" to the prisoner. *Id.* (quoting *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir. 2004)). The test for assessing availability is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill,* 380 F.3d at 688. Second, the court must find out whether the defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibited the inmate's exhaustion of remedies. *Id.* If the inmate was inhibited, he may estop one or more of the defendants from raising the defense. *Id.* Third, even where remedies were available and the defendant is not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify

12

'the prisoner's failure to comply with administrative procedural requirements.'" *Bain v. Velez*, No. 09 Civ. 2316 (DLC), 2010 WL 624956, at *4 (S.D.N.Y. Feb. 19, 2010) (quoting *Hemphill*, 380 F.3d at 686).

In *Bain*, the plaintiff did not attempt to appeal to CORC, in accordance with § 701.8(g), when the superintendent failed to respond. *Bain*, 2010 WL 624956, at *4. The court held that the plaintiff did not "properly exhaust" his remedies as required by the PLRA. *Id.* Here, Wallace's descriptions of his efforts to file grievances are inconsistent with the records provided to the Court. In his Complaint, he claims that he fully exhausted all available remedies by filing a Tier III Appeal and Article 78 Petition. (Compl. ¶ 8.) In his opposition papers, however, Wallace puts forth several distinct arguments and theories. First, he claims that he filed a "grievance and formal complaint" against Fredericks on July 27, 2010, but that "[n]o response from IGRC was received." (Pl.'s Mem. at 2.) Second, he states that he filed a "formal complaint" against Funk and Koskowski on July 31, but that "[n]o investigation was ever conducted in this matter." (*Id.*) He suggests that this complaint was "unanswered" because "Dir. #4040 does not allow the IGRC to discipline or provide disciplinary actions against staff." (*Id.*) Next, he states that he "filed another complaint" against Funk on August 8, but that he "could not file" a grievance" because of "Dir. #4040." (Emphasis in original.) (*Id.* at 3.) Finally, Wallace argues that his August 8 letter qualifies "under the Second Circuit's various exceptions to the exhaustion requirement" because Defendants and IGRC "intentionally ignored Plaintiff's grievances." (*Id.* at 4.) In support of his argument, he cites to *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004).

Wallace appears to be familiar with the grievance system. Although he sets forth several reasons why he has either exhausted the procedures available or should be excused from

13

exhausting them, he simply did not follow the correct procedures. If Wallace's purpose in mentioning Directive #4040 in his opposition was to claim that he read the DOCS regulations incorrectly, or was confused about the procedure, this could provide a basis for excusing him from exhaustion. *See Giano v. Goord*, 380 F.3d 670, 679 (2d Cir. 2004). It is clear from his opposition papers, however, that Wallace does not claim confusion or misinterpretation, but that he believes his complaints and grievances were unanswered because Directive #4040 does not allow the IGRC to discipline staff. (*See* Pl.'s Mem. at 2.) Moreover, he offers no evidence that the grievance process was unavailable, that Defendants' own actions obstructed his ability to exhaust such claims, that Defendants waived their exhaustion defense, or that there "exist any special circumstances that would justify his failure to exhaust." *Hemphill*, 380 F.3d at 686. Because Wallace's claims against Fredericks and Funk are unexhausted, I recommend that Defendants' motion to dismiss as to Fredericks and Funk be **GRANTED**. Accordingly, I recommend that Wallace's claims that Fredericks and Funk violated his rights under the First, Eighth, and Fourteenth Amendments be **DENIED**.

## C. First Amendment Retaliation Claims

In addition to his retaliation claims against Fredericks and Funk, Wallace also alleges that Koskowski, Melville, Lee, and Fischer violated his First Amendment rights. (*See* Pl.'s Mem at 4, 5, 7.) Prison officials may not retaliate against inmates for exercising their constitutional rights. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance nonconclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and adverse action."

14

*Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (quoting *Dawes v. Walker*, 239

F.3d 489, 492 (2d Cir. 2001)). Because retaliation claims by prisoners are "prone to abuse,"

such claims must be supported by specific and detailed factual allegations. *Flaherty v. Coughlin*,

713 F.2d 10, 13 (2d Cir. 1983).

### 1. Wallace's First Amendment Claims Against Melville, Lee, and Fischer are Conclusory.

Wallace alleges that Melville's guilty finding after the hearing was "in retaliation for

Plaintiff's exercise of protected First and Fourteenth Amendment rights to file complaints,

grievances, and objections." (Pl.'s Mem at 5.) It appears that the "retaliatory Misbehavior

Report and confinement for filing complaints and grievances" is the basis for his claim against

Koskowski, Lee, and Fisher. (*Id.* at 4.) Defendants assert that "[n]one of [Wallace's] retaliation

claims against the various defendants passes muster as they all fail to state plausible retaliation

claims." (Defs.' Mem. at 9.) The Court agrees. Although Wallace may have had a viable claim

of retaliation against Funk and Fredericks had he exhausted his administrative remedies, each

allegation against the other named Defendants regarding retaliation is conclusory. Wallace has

failed to describe in detail any specific act that Koskowski, Melville, Lee, or Fischer performed

that infringed or impacted protected speech. Without any protected speech, there can be no

causal connection to the adverse action. I therefore recommend that Wallace's First Amendment

claims be **DENIED**.

### D. Due Process Claims

#### 1. Wallace's Twelve-Month Confinement in SHU

To state a claim for procedural due process violations, a prisoner must establish: (1) that he

enjoyed a protected liberty interest; and (2) deprivation of that interest occurred without due

process of the law. *See Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001). To establish a

protected liberty interest, a prisoner must show that his disciplinary confinement constituted "an

atypical and significant hardship" in relation to the ordinary incidents of prison life and that "the

state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining

free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)

(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). A court must examine the circumstances

of the confinement in SHU, including "the extent to which the conditions of the disciplinary

segregation differ from other routine prison conditions" and "the duration of the disciplinary

segregation imposed compared to discretionary confinement," in determining whether a

protected liberty interest is implicated. *Wright v. Coughlin*, 132 F.3d 133, 136-37 (2d Cir.

1998). Although there is no bright-line standard regarding the length or type of sanction that

constitutes an "atypical and significant hardship," the standard will not be met unless the

disciplinary and administrative sanctions are onerous. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d

Cir. 1999). Segregated confinement sanctions of 125-288 days are considered "relatively long."

*Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000).

Wallace states that his seventy-two-hour pre-hearing keeplock and twelve-month sentence

in SHU violated his Fifth Amendment due process rights and constituted cruel and unusual

punishment, in violation of the Eighth Amendment. (*See id.* at ¶ 23.) He does not allege that his

confinement was "atypical or significant"; he simply states that it was retaliatory. (*See id.* ¶¶ 21,

23.) It appears that Wallace is arguing that his segregation alone was unconstitutional.

Wallace's sentence of twelve months in SHU likely constitutes a "sufficient departure from

the ordinary incidents of prison life." *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)

("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure

from the ordinary incidents of prison life to require procedural due process protections."). I recommend that Wallace be given the opportunity to amend his claim in order to "establish a detailed record regarding the harshness of the confinement." *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009). In his Amended Complaint, Wallace should indicate whether his SHU conditions amounted to an "atypical and significant hardship." *Sandin*, 515 U.S. at 484; *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). He should state the conditions of his confinement as compared to the confinement of prisoners in general population at Green Haven. The conditions may include the percentage of the day that prisoners spend within the cell, hygienic conditions, access to programs, as well as other conditions that may be applicable to Wallace's situation. *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999).

### 2. The Tier III Hearing

Wallace claims that his due process rights were violated because Melville found him guilty of all charges based on a "false and retaliatory" misbehavior report. (Pl.'s Mem. at 5.) Relying entirely on the Hearing Disposition, he argues that there was a lack of substantial evidence to support Melville's finding of guilt, and that the denial of his request to review the confidential witness testimony violated his rights. (*Id.*; Pl.'s Mem., Ex. H.) Citing to *Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988), Defendants argue that Melville's finding of guilt alone is insufficient for Wallace to state a due process claim. (Def.'s Mem. at 11.) They urge the Court to dismiss the claims against Melville because the Complaint "is devoid of any facts alleging due process violations regarding his disciplinary hearing." (*Id.*) Rather than addressing any of Wallace's specific allegations, Defendants repeatedly and summarily state that Wallace's Complaint "fails to allege any due process violations." (*Id.*; Defs.' Reply at 5.)

17

When a prisoner is charged with a disciplinary violation and faces confinement in SHU, he is afforded certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). The Fourteenth Amendment requires that the prisoner be given: (1) advance written notice of the charges against him; (2) a hearing, in which he is given a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *See Wolff*, 418 U.S. at 563-69; *Sira*, 380 F.3d at 69; *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999). "Judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Sira*, 380 F.3d at 69 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### a. Advance Written Notice of the Charges

Wallace does not allege that he received inadequate notice of the disciplinary charges against him. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564 (referencing *In re Gault*, 387 U.S. 1, 33-34, and n.54 (1967)). Due process requires notice with "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Sira*, 380 F.3d at 72. A misbehavior report that advises the plaintiff of the date, place, and conduct at issue has been found to satisfy the standard. *See Samuels v. Selsky*, 166 Fed. App'x. 552, 554 (2d Cir. 2006). As part of his opposition papers, Wallace submitted his August 5, 2010 misbehavior report, which provides the date, time, location, and facts of the incident, as well as the charges against him. (Pl.'s Mem. Ex. C.) Wallace's hearing began on August 9, 2010, at 10:18 a.m., more than

18

twenty-four hours after the misbehavior report was created.  (Pl.'s Mem. Ex. H.)  The notice requirement is, therefore, satisfied.

### b. The Right to Call Witnesses

Wallace claims that he was denied due process because he was not permitted to call Elliot, the assault victim, as a witness.  (Compl. ¶ 14; Pl.'s Mem. at 5.)  Lockwood's letter indicates that Elliot told Lockwood that Wallace did not cut him. (*See* Pl.'s Mem. Ex. E.)  Elliot had originally agreed to testify on Wallace's behalf, "but then abruptly changed his mind."  (*Id.*)  Two explanations are offered for why Elliot refused to testify: (1) Elliot feared retaliation from "unnamed and unidentified" correction officers (*id.*); and (2) Elliot "did not see his attacker and therefore could not say whether it was or was not Wallace."  (*See* Pl.'s Mem. Ex. F at 3.)

A prisoner has a due process right to summon witnesses in his defense at a disciplinary hearing, "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals."  *Wolff*, 418 U.S. at 566.  Additionally, "if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  Here, because Elliot filled out the Witness Refusal Form, calling him as a witness would have been futile.  However, to the extent that Wallace suggests that correction officers at Green Haven coerced Elliot to not testify, Wallace's claim may have merit, because it seems to be based on more than mere speculation.

A plaintiff's due process claim that rests solely on speculation cannot survive.  *Twombly*, 550 U.S. at 555; *Dawkins*, 646 F. Supp. 2d at 612.  In *Dawkins*, the plaintiff was accused of distributing heroin in the correctional facility where he was incarcerated. 646 F. Supp. 2d at 602.  After a misbehavior report was issued and Dawkins was placed in SHU, he receive a letter

from another prisoner stating he believed that Dawkins was innocent and offering to testify on his behalf. *Id.* Dawkins was later informed that the other prisoner refused to testify. *Id.* Dawkins alleged that prison officials used coercion to dissuade the other prisoner from testifying. *Id.* at 612. The court found that this allegation did not raise the plaintiff's claim above the level of speculation. *Id.* (citing *Twombly*, 550 U.S. at 555)). The facts presented here are similar to those in *Dawkins*, with a notable exception: Lockwood's memo to Koskowski. The memo unequivocally states that Elliot believed Wallace innocent, but "abruptly changed his mind" about testifying because he feared retaliation from the correction officers. (Pl.'s Mem. Ex. E.) In the Hearing Disposition, there is no indication that Melville considered Lockwood's memorandum or its implications. Wallace has alleged sufficient facts to show his due process rights were likely violated.

### c. Fair and Impartial Hearing Officer

Wallace alleges that Melville's finding of guilt and imposition of a twelve-month confinement in SHU was retaliatory and based on bias. (Pl.'s Mem at 5.) He seems to imply that Melville's mere involvement with the Tier III hearing was per se retaliatory, or that the false misbehavior report itself violated his right to due process of law. (*See* Pl.'s Mem. at 5, 8.) His contentions are not supported by the record as it currently stands.

First, prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman*, 808 F.2d at 951. As long as the inmate was afforded a fair opportunity to refute the charges, the due process claim cannot survive. *Id.* at 953. Wallace has not alleged he was not given such an opportunity.

Second, prisoners are entitled to have their disciplinary charges reviewed by an unbiased

hearing officer. *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994). Here, Wallace supplies no facts

that indicate Melville said or did anything that showed bias or impartiality. No transcript of the

hearing has been provided, and the Court is unable to evaluate what happened at the hearing.

Because the facts as presented do not allow the Court to determine whether Melville

demonstrated bias, the Court recommends the Wallace be permitted to provide information in his

Amended Complaint regarding specific comments made by Melville at the hearing, if any, that

showed he did not approach the hearing with an open mind, and to provide documentary

evidence, such as a transcript of the hearing.

### d. Disclosure of Evidence and Reasons for the Disposition

Wallace states that his right to due process of law was violated because he was not

permitted to review the confidential witness testimony. (Pl.'s Mem. at 5.) Due process

generally entitles an inmate to know the evidence upon which a disciplinary ruling is based.

*Samuels*, 166 Fed. App'x. at 554 (referencing *Sira*, 380 F.3d at 74). Although prison officials

have substantial discretion when conducting hearings, those who "circumscribe inmates'

procedural rights at disciplinary proceedings must offer a reasonable justification for their

actions," *Sira*, 380 F.3d at 70, or "information concerning the evidence upon which his

disciplinary ruling was based." *Dawkins*, 646 F. Supp. 2d at 612. Here, Wallace was provided

with neither.

In *Dawkins*, the sole justification provided by the hearing officer for the non-disclosure of

confidential evidence and testimony was that such disclosure would "jeopardize the safety of

other inmates and safe secure running of the facility." *Id.* The court found that the plaintiff

alleged a viable due process claim based on the non-disclosure. *Id.* Melville has offered the

same reason in this case, without explaining how the safety of the facility would be implicated. (Pl.'s Mem. Ex. H at 3.)  Even if Defendants had established that the physical appearance of the witnesses posed a safety risk, Wallace was entitled to know the substance of the testimony. *Dawkins*, 646 F. Supp. 2d at 612.  At this stage, the Court concludes that Wallace has alleged sufficient facts to support a finding that he has a viable due process claim based on non-disclosure of the evidence.  The Court recommends that Wallace be given information concerning the evidence upon which his guilty disposition was based.  If Defendants maintain that such information would jeopardize the safety of inmates at Green Haven, then the Court recommends that Wallace be appointed pro bono counsel for the limited purpose of reviewing the hearing transcript and determining whether Wallace's due process claim has merit.

### e. Sufficiency of the Evidence

Wallace has additionally challenged the sufficiency of the evidence relied upon by Melville in rendering his disposition, stating that the imposition of twelve months of SHU and loss of all privileges was not supported by "substantial evidence."  (Pl.'s Mem. at 5.)  "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."  *Superintendent v. Hill*, 472 U.S. at 455.  The "some evidence" standard requires the evidence be "reliable."  *Luna v. Picco*, 356 F.3d 481, 488 (2d Cir. 2004).

There are issues of fact that must be resolved.  Wallace maintains that the charges against him were entirely fabricated, and that he never attacked Elliot.  Lockwood's memo to Koskowski supports his position.  Defendants have offered minimal explanation and conclusorily rely on safety considerations.  A hearing took place at which two confidential informants provided confidential testimony.  Based on the testimony, Wallace was sentenced to

22

a lengthy – and potentially unconstitutional – SHU confinement and his privileges were revoked.
A standard that allows an institution to conduct a secret hearing in which the names of the
witnesses and the substance of their testimony is not revealed, and then to declare that it has
sufficient evidence to impose a harsh sentence, is inconsistent with due process and fairness.
Even in a prison, where safety is of utmost importance, there must be some protections afforded
to inmates who allege serious constitutional violations.  As the record currently stands, the
evidence is not reliable.

### E.  Personal Involvement of Supervisory Officials

To state a cognizable claim under § 1983, a plaintiff must show that the defendants were
personally involved in the alleged constitutional violation.  *Gaston v. Coughlin*, 249 F.3d 156,
164 (2d Cir. 2001).  "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must
plead that each Government-official defendant, through the official's own individual actions, has
violated the Constitution."  *Iqbal*, 556 U.S. at 676; *Hernandez v. Keane*, 341 F.3d 137, 144 (2d
Cir. 2003).  Mere presence in the "prison chain of command" is insufficient to demonstrate
personal involvement.  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

In the Second Circuit, the personal involvement of a supervisory defendant may be shown
by evidence that:

> (1) the defendant directly participated in the alleged constitutional violation; (2) the
> defendant failed to remedy the wrong after being informed of the violation through
> a report or appeal; (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom; (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts; or (5) the defendant exhibited a deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.  The Second Circuit has not yet addressed what remains of the five

factors after *Iqbal*, "and the district courts in this Circuit, as well as the other courts of appeals,

have grappled with this question and reached conflicting results." *Turkmen v. Ashcroft*, 915 F.

Supp. 2d 314, 335-36 (E.D.N.Y. Jan.15, 2013) (listing cases).  This Court agrees with those

courts which have concluded that *Iqbal* did not abrogate the five forms of evidence articulated in

*Colon.  See Toliver v. City of N.Y.*, No. 10 Civ. 5803 (LTS), 2012 WL 6013098,  at *6 (S.D.N.Y.

Dec. 3, 2012) (applying the five *Colon* factors to show personal involvement of supervisory

defendants); *but see Richardson v. Dep't of Corr.*, No. 10 Civ. 6137 (SAS), 2011 WL 710617, at

*2 (S.D.N.Y. Feb. 28, 2011) (stating that only "the first and third *Colon* factors have survived

the Supreme Court's decision in *Iqbal*.").

      Wallace asserts that Lee, Koskowski, Fischer, and Prack were personally involved in the

constitutional violations because they were informed of the retaliation "through complaints,

grievances, and 8/12/10 sworn statement" but they did not remedy the wrong, and because they

"created a policy or custom" under which unconstitutional acts continued for eight months.

(Pl.'s Mem. at 5.)  "[A]n allegation that an official ignored a prisoner's letter of protest and

request for an investigation of allegations made therein is insufficient to hold that official liable

for the alleged violations." *Garcia v. Watts*, No. 08 Civ. 7778 (JSR), 2009 WL 2777085, at *14

(S.D.N.Y. Sept. 1, 2009).  However, "[w]hile mere receipt of a letter from a prisoner is

insufficient to establish individual liability, an official's actions and responses arising out of a

grievance may." *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004).  Wallace has

failed to allege sufficient facts to demonstrate that Fischer, Prack, or Lee were personally

involved in any constitutional violations.  He did not properly file grievances, and therefore Lee

had no duty to respond.  7 N.Y.C.R.R. § 701.8.  Furthermore, Wallace makes broad and

conclusory statements by merely listing the five *Colon* factors. (Compl. ¶ 20.) He neither specifies how Defendants were grossly negligent nor does he state the underlying policy or custom that resulted in his alleged constitutional violations. The mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983. *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *3 (S.D.N.Y. Mar. 23, 2012); *Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011).

Moreover, Wallace's allegation that Commissioner Fischer and Director Prack affirmed his guilty disposition despite evidence to the contrary fails to establish personal involvement in the alleged denial of his constitutional rights. Courts in this Circuit have generally held that the second *Colon* factor requires more than the mere affirmation of, for example, a grievance determination on appeal and subsequent inaction to establish personal involvement. Wallace also stated that the supervisory defendants failed to step in and stop the Tier III hearing after being notified of the retaliation and due process violations via his letters. (Compl. ¶ 15.) Wallace asserted that he sent letters to Lee and Fischer, and that his Corrections Counselor sent a letter to Koskowski regarding the victim's statements that Wallace was not guilty. Even if Defendants received notice of Wallace's grievances and failed to act upon them, this alone would not be sufficient to establish supervisory liability. *Simmons v. Cripps*, No. 12 Civ. 1061 (PAC) (DF), 2013 WL 1290268, at *11 (S.D.N.Y. Feb. 15, 2013). Thus, Wallace's only claim of liability against the supervisory defendants appears to be their alleged knowledge of his complaints. Taking Wallace's allegations as true, his letters only show that Defendants were put on notice of the complained of conduct after the fact. Mere knowledge of prior conduct which amounts to a constitutional violation is insufficient to establish personal involvement. *Colon*, 58 F.3d at 873; *see also Walker v. Clemson*, 11 Civ. 9623 (RJS) (JLC), 2012 WL 2335865, at *7

25

(S.D.N.Y. June 20, 2012) ("Simply writing to a supervisory official cannot establish personal involvement as a matter of law.)"; *Davis v. City of N.Y.*, No. 00 Civ. 4309 (SAS), 2000 WL 1877045, at *9 (S.D.N.Y. Dec. 27, 2000) (finding no personal involvement where supervisory official ignored letter of protest and had no other involvement in alleged constitutional deprivation). Accordingly, the claims against Fischer, Koskowski, Lee, and Prack should be dismissed for lack of personal involvement.

## F. Immunity Under The Eleventh Amendment

The Eleventh Amendment "bars a suit by a citizen of a state against that state or one of its agencies, absent the state's consent to such a suit or an express statutory waiver of immunity." *Dawkins*, 646 F. Supp. 2d at 604. Congress did not intend to abrogate the states' immunity by enacting 42 U.S.C. § 1983. *Id.*; *see also Quern v. Jordan*, 440 U.S. 332, 343-44 (1979). While the Eleventh Amendment bars recovery against an employee who is sued in his official capacity, it does not shield him from liability if he is sued in his "individual" or "personal capacity." *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). Wallace's Complaint names Defendants in their individual and official capacities. To the extent that Wallace is suing Defendants in their official capacities to recover monetary damages, his claims are barred by the Eleventh Amendment. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002).

### 1. Qualified Immunity

Qualified immunity shields a government officer from liability under § 1983 if: (1) his conduct does not violate a clearly established constitutional right, or (2) it was "objectively reasonable" for the officer to believe that his conduct did not violate a clearly established right. *Toliver*, 2013 WL 3779125 at *12. The qualified immunity standard gives "ample room for

26

mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Davis v. Rhoomes*, No. 07 Civ. 6592 (JGK), 2009 WL 415628, *10 (S.D.N.Y. Feb. 19, 2009).

The court must first undertake a threshold inquiry into whether the plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, the court must determine whether the right was "clearly established" at the time it was allegedly infringed. *Id.* at 201. A right is "clearly established if: (1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that [his] conduct was unlawful." *Sales*, No. 03 Civ. 6691 (RJH), 2004 WL 2781752, at *16.

Because the Court recommends that the claims against Prack, Fischer, Koskowski, Fredericks, and Lee be dismissed, it only considers the issue of qualified immunity with respect to Funk and Melville. The claims against Funk should be dismissed for failure to exhaust administrative remedies. If Wallace had exhausted his remedies, however, his retaliation claim against Funk would not be dismissed at this stage. Filing grievances for redress from the government is a clearly established right. *Baskerville*, 224 F. Supp. 2d at 731. Moreover, a reasonable officer would know that his adverse action of filing a misbehavior ticket in retaliation against an inmate is unlawful. *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002); *Colon*, 58 F.3d at 872. Therefore, Funk is not entitled to qualified immunity since Wallace was able to assert a retaliation claim against him, notwithstanding the exhaustion issue.

Wallace's claim against Melville is based on Melville's role as the hearing officer. Wallace alleges that Melville failed to adequately justify his denial of Wallace's request to hear testimony, or at least the substance of the testimony, from the confidential witnesses. Further,

the resulting SHU confinement of 365 days is a sufficient departure from ordinary prison life to require procedural due process protections. *Giano*, 238 F.3d at 225. Accordingly, a clearly established right has been violated, and further facts are needed to develop whether it was reasonable or not for Melville to know his conduct was unlawful. Therefore, the Court recommends that Melville is not entitled to qualified immunity.

### G. Attorney Sanctions

Wallace asks that Defendants' attorney be sanctioned for "knowingly, willingly, and with a subjective recklessness to waste this Court's valued and need[ed] resources" filing a "falsified sworn" affidavit from a "sadistic prison employee." (Pl.'s Mem. at 11.) Wallace claims that Defendants' counsel is unfamiliar with the law. (*Id.* at 17.) He states that the attorney's behavior violates Rule 11(b)(1) of the Federal Rules of Civil Procedure and that she should be sanctioned to "deter her . . . from filing such reports." (*Id.*)

Rule 11 provides, that by submitting a signed pleading, motion or other paper to the Court, a party or attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Rule 11 applies to attorneys and *pro se* litigants alike, and prohibits parties from filing a pleading "for any improper purpose, such as to harass," or for asserting claims that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *O'Brien v. Alexander*, 101 F.3d 1479, 1488-90 (2d Cir. 1996); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007). The decision to impose Rule 11 sanctions ultimately rests in the sound discretion of the court, *see Perez v. Posse Comitatus*, 373

F.3d 321, 325 (2d Cir. 2004), and "should be imposed with caution." *Murawski*, 514 F. Supp. 2d at 590 (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)).

Wallace failed to comply with the requirement that "a motion for Rule 11 sanctions must be made independently from other motions." *Treanor v. Treanor*, No. 08 Civ. 0151 (HB), 2012 WL 1448848, at *3 (S.D.N.Y. Apr. 25, 2012). Additionally, Rule 11 contains a "safe harbor" provision which requires that the sanctions motion be served on the allegedly offending party twenty-one days before it is filed with the court. Fed. R. Civ. P. 11; *Treanor*, 2012 WL 1448848, at *3.

Rather than make a formal motion for sanctions, which would have given Defendants' counsel an opportunity to address the motion, Wallace requested sanctions as an aside in his opposition papers. The request, therefore, is denied. *See Banfield v. UHS Home Attendants, Inc.*, No. 96 Civ. 4850 (JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997). Even if Wallace had followed the procedural requirements, he has failed to proffer any evidence that Defendants' attorney was bringing frivolous claims or that she acted in bad faith with the intent to harass or injure. *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007).

## IV.  CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss be **GRANTED** in part and **DISMISSED** in part. Specifically, I recommend that:

(1) Defendants' motion to dismiss Wallace's claims against Fredericks and Funk be **GRANTED** because Wallace failed to exhaust his administrative remedies under the PLRA;

(2) Defendants' motion to dismiss Wallace's First Amendment claims against all Defendants be **GRANTED**;

(3) Defendants' motion to dismiss Wallace's Due Process claims be **DENIED**, and Wallace be permitted to amend his Complaint, as detailed above;

29

(4) Defendants' motion to dismiss Wallace's claims against Fischer, Koskowski, Lee, and Prack be **GRANTED** for lack of personal involvement;

(5) Defendants' request that Defendants be entitled to qualified immunity be **DENIED** as to Melville, and **GRANTED** as to the other Defendants; and

(6) Wallace's motion for sanctions be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 1350, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

**Dated: March 11, 2014**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**