UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KEITH WALLACE,

                                 Plaintiff,

                - against -

LIEUTENANT MELVILLE,

                                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: November 3, 2015

12 Civ. 8723 (PAC) (RLE)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Keith Wallace brings this *pro se* 42 U.S.C. § 1983 action against defendant Hearing Officer Lieutenant Melville. Wallace alleges that Lt. Melville denied him due process in his prison disciplinary hearing, resulting in his confinement in the Special Housing Unit (SHU) at Green Haven Correctional Facility for 12 months. On May 26, 2015, Lt. Melville moved for judgment on the pleadings. On August 12, 2015, Magistrate Judge Ronald L. Ellis recommended that the motion be denied.

The Court declines to adopt Magistrate Judge Ellis's Report and Recommendation (R&R) and grants Lt. Melville's Motion for Judgment on the Pleadings.

I.     **Background**

      a.     **Facts**[1]

Wallace is an inmate at Green Haven Correctional Facility. (Dkt. 2.) On July 27, 2010, Wallace wrote a letter to Superintendent William A. Lee, which he called a "formal complaint as a grievance." (Dkt. 19, Ex. A.) Wallace claimed that Officer Fredericks threatened him with disciplinary charges in retaliation for challenging Fredericks's "racist, sadistic and inhumane

---

[1] The Court draws these facts from Wallace's Complaint (Dkt. 2) and his Response to Defendants' Motion to Dismiss (Dkt. 19) as summarized by the R&R.

1

conduct." (*Id.*) Wallace claimed that Officer Fredericks falsely accused him of transporting drugs into the jail and told him that "the next stabbing or cutting in G-block would be his." (*Id.*)

On July 31, 2010, Wallace wrote another letter to Superintendent Lee alleging that when Sergeant Funk interviewed him regarding the complaint against Officer Fredericks, Sergeant Funk said, "I don't believe inmates over my officers and if you continue to file complaints you will be set up and sent to the box for a long time." (Dkt. 19, Ex. B.) Wallace stated that Sergeant Funk, Officer Fredericks, and Deputy Superintendent Koskowski were conspiring and retaliating against him, and he asked Superintendent Lee to send the Inspector General to investigate. (*Id.*)

On August 3, 2010, prison officials placed Wallace under a seventy-two hour investigation for cutting an inmate, Elliot, in G-Block. (Dkt. 2, ¶ 12.) Wallace alleges Elliot told Sergeant Funk and Officer Fredericks that Wallace was not the one who cut him. (*Id.*) Thus, Wallace maintains that the investigation was retaliatory. (*Id.*) On August 5, 2010, Sergeant Funk filed an inmate-misbehavior report, charging Wallace with violations of Rules 100.10 (inmate shall not assault or inflict harm upon another inmate) and 113.10 (inmate shall not possess or use a weapon). (*Id.* at ¶ 13; Dkt. 19, Ex. C.) In response, Wallace sent another letter to Superintendent Lee on August 8, 2010. (Dkt. 19, Ex. D.) In this letter, he stated that he received a "retaliatory and falsified Tier III Misbehavior Report" and that he was nowhere near inmate Elliot during the incident. (*Id.*)

On August 12, 2010, Correction Counselor Michael Lockwood wrote a letter to Deputy Superintendent Koskowski. (Dkt. 19, Ex. E.) In his letter, he wrote:

> Inmate Elliot did not at this time disclose who his assailant was, or is, and that unnamed and unidentified (to this writer) Correction Officers told Inmate Elliot that Wallace was his assailant and that they "wanted Wallace." Inmate Elliot stated that he has approximately seven months left before his release and fears retaliation from fore mentioned security staff.

(Dkt. 39, Ex. C.)

On August 16, 2010, Wallace wrote again to Superintendent Lee, asserting that the rule violations and misbehavior report were untrue. (Dkt. 19, Ex. F.) Also on August 16, 2010, Elliot completed a Requested Inmate Witness Refusal to Testify in Tier II/Tier III Disciplinary Hearing Form, in which he wrote that he "did not see [the] attacker and therefore cannot offer credible testimony stating whether it was or was not Mr. Wallace." (*Id.* at 3.)

Between August 5 and August 26, 2010, prison officers placed Wallace in segregated confinement, or keeplock, while Lt. Melville reviewed the allegations against him. (Dkt. 19, Ex. H at 1.) On August 26, 2010, Wallace testified at his Tier III Hearing. (Dkt. 39, Ex. D.) During the proceedings, Wallace called Elliot's neighboring inmate to verify that there was no interaction between Wallace and Elliot. (*Id.* at 15, 20.) He also requested that Counselor Lockwood and Elliot testify. (*Id.*, Ex. F.) Lt. Melville denied the second request because Elliot had filed a Witness Refusal Form. (*Id.*)

After the Tier III Hearing, Lt. Melville found Wallace guilty and imposed a twelve-month sentence of SHU confinement with loss of privileges. (Dkt. 19, Ex. H at 1.) Lt. Melville wrote in his Hearing Disposition that he relied on "confidential testimony from two sources," which he "deemed credible and reliable." (*Id.* at 2.) Lt. Melville also wrote that the confidential information obtained was consistent with the misbehavior report and those two sources were enough to find Wallace guilty. (*Id.*) Lt. Melville did not allow Wallace to "review confidential testimony in order to not jeopardize the safety and security of the facility." (*Id.* at 3.)

On September 8, 2010, Wallace appealed Lt. Melville's decision, and on November 4, 2010, Albert Prack, Director of Special Housing/Inmate Disciplinary Program, affirmed Lt. Melville's decision. (Dkt. 19, Ex. I, J.)

In March 2011, Wallace filed an Article 78 Petition challenging Lt. Melville's decision. (Dkt. 39, Ex. B.) In his Article 78 Petition, Wallace argued that Lt. Melville deprived him of a fair hearing because he did not provide him with confidential testimony or Counselor Lockwood's letter and

3

would not permit him to call Elliot as a witness. (*Id.*) The Appellate Division, Third Department, denied Wallace's Article 78 Petition, stating that Lt. Melville had properly ascertained the reliability of the confidential informants and the misbehavior report was detailed enough to enable Wallace to prepare a defense. *See Wallace v. Prack*, 940 N.Y.S. 2d 695, 695 (N.Y. App. Div. 2012).

    **b.**    **Proceedings**

On November 29, 2012, Wallace commenced this action (Dkt. 2), naming as defendants Brian Fischer, Commissioner of the New York State Department of Correctional Services; Superintendent Lee; Lieutenant Lt. Melville; Sergeant Funk; Officer Fredericks; Director Prack; and Deputy Superintendent R. Koskowski. Construed liberally, the Complaint set forth the following claims: (1) After Wallace accused Fredericks of racial discrimination, Funk and Fredericks retaliated by filing a misbehavior report in which they falsely accused Wallace of assaulting Elliot (*id.* at ¶¶ 1,2, 10); (2) Koskowski, Lee, and Fischer failed to step in and stop the Tier III Hearing (*id.* at ¶ 15); (3) Lt. Melville illegally "found [Wallace] guilty of all charges and imposed 12-months of SHU confinement" and loss of all privileges (*id.* at ¶ 16); (4) Fischer and Prack "acted in concert to prevent [Wallace] from receiving a fair and impartial Tier III Appeal" and violated federal and state laws by affirming Wallace's guilty disposition (*id.* at ¶¶ 15, 18); (5) Fischer, Prack, and Lee failed to adequately train and supervise Federicks, Funk, Lt. Melville, and Koskowski, "ignored evidence" that Fredericks and Funk had retaliated against him, "which amounts to cruel and unusual punishment," and failed to protect Wallace (*id.* at ¶¶ 22, 23, 24); (6) Defendants denied Wallace adequate treatment, which violated his due process rights (*id.* at ¶ 20); and (7) Fischer, Prack, Lee, and Koskowski systematically created a policy, custom, and pattern which allowed Fredericks, Funk and Lt. Melville to "frame" Wallace "without fear of any sanctions." (*Id.*)

Defendants moved to dismiss all claims. (Doc. Nos. 16, 17, 18.) On March 11, 2014, Magistrate Judge Ellis issued an R&R recommending the dismissal of all claims, except the due-

process claims against Lt. Melville. (Dkt. 25.) In addition, the R&R recommended that Wallace be granted leave to file an amended complaint in order to "establish a detailed record regarding the harshness of confinement" in SHU. (*Id.* at 17.) On March 26, 2014, Wallace filed objections to the R&R and an Amended Complaint together in one document. (Dkt. 26.) On March 31, 2014, the Court adopted the R&R in its entirety. (Dkt. 28.)

Lt. Melville moved for judgment on the pleadings, arguing that this Court lacks subject-matter jurisdiction over Wallace's due-process claim because collateral estoppel and the *Rooker–Feldman* doctrine bar review. (Doc. Nos. 37, 38.) *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[2] Lt. Melville claims that the Appellate Division already decided Wallace's due-process claim when it denied his Article 78 Petition. (Dkt. 38 at 4.) Lt. Melville also argues that if the Court construes Wallace's Amended Complaint as alleging a stand-alone Eighth Amendment violation, Wallace has failed to state a claim. (*Id.* at 9.) Wallace filed a Response in Opposition arguing that the doctrine of collateral estoppel is grounded in fairness and the Court should not apply it rigidly. (Dkt. 41 at 4.) He also asserts that the Appellate Division did not afford him a full and fair opportunity to litigate his due-process claim. (*Id.* at 4.)

On August 12, 2015, Magistrate Judge Ellis issued his second R&R, recommending that the Court deny Lt. Melville's motion. (Dkt. 43.) The R&R construed Wallace's Amended Complaint to allege that Lt. Melville denied Wallace due process in his disciplinary hearing, which led to his confinement in the SHU for 12 months. (*Id.* at 1.) The R&R recommended that collateral estoppel and the *Rooker-Feldman* doctrine did not bar Wallace's due-process claim, reasoning that "[s]ince the Appellate Division did not address Wallace's due process claims based on federal standards, Wallace was not afforded a full and fair opportunity to litigate his federal claims." (*Id.* at 8–9.) The R&R further noted that "given the limitations that he was in SHU, Wallace did not have a full and

---

[2] In his objections to the second R&R, Lt. Melville abandoned the argument that Wallace's claim is barred by the *Rooker–Fedlman* doctrine. (Dkt. 44 at 1 n.1.)

fair opportunity to litigate his Article 78 Petition." (*Id.* at 9 n.3.) As for the potential Eighth Amendment claim identified by Lt. Melville in his moving papers (Dkt. 38 at 9), the R&R stated: "[In its order adopting the previous R&R, the Court] considered Wallace's additional allegations and concluded, 'Wallace has plausibly alleged the deprivation of a liberty interest.' Therefore, I recommend that Lt. Melville's assertion that Wallace failed to allege a viable Eighth Amendment claim be denied." (*Id.* at 10–11 (citation omitted) (emphasis omitted).)

Lt. Melville timely objected to the R&R. (Dkt. 44.) Lt. Melville argues that a state court need not cite federal law to decide a federal claim. (*Id.* at 5–6.) Lt. Melville further argues that the R&R fails to recognize that "the unique requirements of prison security" may justify the nondisclosure of a confidential informant's identity and testimony. (*Id.* at 6.) As for Wallace's potential Eighth Amendment claim, Lt. Melville reiterates that Wallace has failed to state a claim. (*Id.* at 8–9.)

## II.     Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). The Court may adopt those portions of an R&R to which no objections have been made and which are not facially erroneous. *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). But when a timely objection is made, the Court reviews the contested portions de novo. *See Arista Records LLC v. Doe*, 604 F.3d 110, 116 (2d Cir. 2010) (citing Fed. R. Civ. P. 72(b)(2)).

The standard for dismissing a cause of action pursuant to Fed. R. Civ. P. 12(c) is the same as the standard for a Rule 12(b)(6) motion. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In reviewing a Rule 12(b)(6) motion, a court must accept the factual allegations in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

**III.     Analysis**

    **a.     Due-Process Claim**

The Full Faith and Credit Statute, 28 U.S.C. § 1738, mandates that federal courts give a prior state-court judgment the same preclusive effect that it would be given by the state courts. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982). The Court therefore looks to New York law to determine what preclusive effect the prior judgment in Wallace's Article 78 Proceeding has in this case.

In New York, collateral estoppel, or issue preclusion, has two elements: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action"; and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (quoting *Juan C. v. Cortines*, 89 N.Y. 2d 659, 667 (1997)). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

In his Article 78 Proceedings, Wallace argued that (1) he was denied the opportunity to present documentary evidence proving his innocence; (2) the hearing officer denied him access to review confidential statements; and (3) the hearing officer was biased. (Dkt. 39, Ex. C); *see also Wallace*, 940 N.Y.S. at 695. As the R&R acknowledges, those claims are "fundamentally similar" to those raised here. (Dkt. 43 at 7.) Nonetheless, the R&R concludes that Wallace's due-process claims are not barred by the doctrine of collateral estoppel. The R&R explains that because "the Appellate Division rejected [Wallace's due-process] claims by citing New York state cases that did not employ federal constitutional analysis," Wallace's prior Article 78

Proceeding did not actually and necessarily decide his federal due-process claims. (*Id.* at 7–8.) The Court disagrees.

The R&R contrasts a prisoner's federal "right to know the substance of the private testimonial evidence used to convict him" with state law, which he asserts "do[es] not afford a prisoner a right to see all of the evidence used against him." (*Id.* at 8.) But the R&R fails to consider that federal law, like state law, recognizes that the "unique" requirements of prison security may justify a hearing officer's reliance on the in camera testimony of a confidential informant. *Giakoumelos v. Coughlin*, 88 F.3d 56, 62 (2d Cir. 1996). Indeed, to the extent federal and state procedural protections differ, New York is more protective of prisoners. *See Sira v. Morton*, 380 F.3d 57, 76 n.9 (2d Cir. 2004) (noting that New York law requiring prison disciplinary ruling to be supported by "sufficiently relevant and probative" information "to constitute substantial evidence" is stricter than the federal due-process requirement of "some evidence"). It is thus immaterial that the Appellate Division relied on New York caselaw in denying Wallace's due-process claims; New York's procedural protections are greater than federal due-process requirements in this context. *See Giakoumelos*, 88 F.3d at 61–62 (finding plaintiff's federal due-process claim barred by collateral estoppel based on an Appellate Division decision that cited solely state caselaw). Finally, the R&R's assertion that Wallace did not have a full and fair opportunity to litigate his federal due-process claims is belied by the record. Wallace filed an extensive Article 78 petition along with supporting documentary evidence in which he made all the claims he makes here. (Dkt. 39, Ex. B, C.) The Appellate Division reviewed that evidence and issued a reasoned decision denying his petition. *See Wallace*, 940 N.Y.S. at 695.

  **b.**  **Eighth Amendment Claim**

Magistrate Judge Ellis notes that in its order adopting his first R&R, the Court "considered Wallace's additional allegations and concluded, 'Wallace has plausibly alleged the deprivation of a

liberty interest.'" (Dkt. 43 at 10 (citing Dkt. 28).) On that basis alone the R&R recommends that the Court deny Lt. Melville's motion to dismiss Wallace's potential Eighth Amendment claim. (*Id.*)

The R&R misconstrues the Court's order. The mere fact that Wallace "has plausibly alleged the deprivation of a liberty interest" under the Fifth Amendment says nothing about whether he has plausibly alleged a viable Eighth Amendment claim. In fact, the Court does not construe Wallace's Amended Complaint as raising a stand-alone Eighth Amendment claim at all. The Amended Complaint's new allegations regarding the harshness of confinement in the SHU were included in response to the first R&R's recommendation that he include such allegations to establish deprivation of a liberty interest under the Fifth Amendment. *See Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005) (holding that administrative punishment does not implicate a liberty interest protected by the Fifth Amendment unless the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))). It does not raise an Eighth Amendment claim.

And even if the Court were to construe the Amended Complaint as alleging a violation of the Eighth Amendment, Wallace has failed to state a claim under § 1983. Wallace has failed to allege (1) "that the deprivation alleged is objectively sufficiently serious such that [he] was denied the minimal civilized measure of life's necessities"; and (2) that Lt. Melville "possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### c. Leave to Amend

Because Wallace's due-process claim is collaterally estopped, the Court concludes that permitting Wallace to amend his complaint a second time would be futile.

## IV. Conclusion

The Court GRANTS Lt. Melville's Motion for Judgment on the Pleadings. Wallace's Amended Complaint is DISMISSED with prejudice in its entirety. The Clerk is directed to terminate the case. Pursuant to 28 U.S.C. § 1915(a)(3), the Court finds that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

Dated: New York, New York
November 3, 2015

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

Copies mailed to:

Keith Wallace
01-A-3093
Auburn Correctional Facility
P.O. Box 618 A.C.F.
Auburn, NY 13024-0618